436                October 9, 2024                No. 721

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. J. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

J. J. L.,
*Respondent,*

*v.*
K. K.,
*Appellant.*

Klamath County Circuit Court
21JU01988; A183710 (Control)

In the Matter of H. J. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

H. J. L.,
*Respondent,*

*v.*
K. K.,
*Appellant.*

Klamath County Circuit Court
21JU01989; A183711

Andrea M. Janney, Judge.

Argued and submitted August 21, 2024.

Gabe Newland, Deputy Public Defender, argued the
cause for appellant. Also on the briefs was Shannon Storey,

Chief Defender, Juvenile Appellate Section, Office of Public Defense Services/Oregon Public Defense Commission.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Daniel J. Casey filed the brief for respondents J. J. L. and H. J. L.

Before Lagesen, Chief Judge, Mooney, Judge, and DeVore, Senior Judge.

MOONEY, P. J.

Affirmed.

**MOONEY, J.**

In these consolidated juvenile dependency cases, mother appeals the permanency judgments concerning her children, J and H, in which the juvenile court changed the case plans from reunification to adoption and ordered the Department of Human Services (DHS) to file petitions to terminate mother's parental rights and sever her legal relationship with them. Mother raises the same two assignments of error in each case challenging (1) the juvenile court's findings that DHS made reasonable efforts to reunite her with her children and (2) its orders changing the plan in each case from reunification to adoption. We are satisfied that mother adequately preserved her arguments for appeal and we reject the contrary argument of counsel for J and H without discussion. We affirm.

We recently described the standard of review in permanency judgment appeals:

"We review findings of fact—such as what DHS did or did not do—for any evidence. We review conclusions of law—such as whether the facts support the conclusion that DHS made reasonable efforts—for legal error. We view the evidence in the light most favorable to the court's disposition to determine if it supports the court's legal conclusions. We draw the facts from the record that was before the juvenile court when it changed the permanency plan."

*Dept. of Human Services v. T. F.*, 331 Or App 682, 684, 548 P3d 510 (2024) (citations, internal quotation marks, and footnotes omitted). That standard applies here, and we state the relevant facts accordingly.

DHS removed J and H from their mother's care in early 2021 after mother physically abused J with a belt. She was convicted of related criminal offenses and sentenced to probation. In May of that same year, the juvenile court established jurisdiction over J and H after finding that mother physically abused J and that she neither understood her children's needs nor had the skills to safely parent them. She was offered domestic violence courses, a psychological evaluation, transportation assistance, visits with J and H, and hands-on parenting time and training. Things

appeared to be on track toward reunification, with mother participating in services and spending time with J and H.

Things took a turn, however, in February 2022 when mother's youngest child, P,[1] who had remained in mother's care, was removed because of an incident where, among other things, mother was found to have been intoxicated, with a blood alcohol content (BAC) of .25 percent, while P was in her care. As a result, mother was sanctioned for violating her probation in the criminal matter, and she was directed to participate in a drug and alcohol program by the juvenile court in this dependency case. Mother attended the drug and alcohol assessment and was diagnosed with mild alcohol use disorder. The program recommended outpatient treatment, in which mother participated for several months. She produced negative urinalyses (UAs) from February to April 2022, at which point her participation in alcohol treatment waned. Mother also continued her mental health treatment services until late summer 2022 when she was charged with driving under the influence of intoxicants (DUII) while having a BAC over .15 percent.

DHS referred mother for a comprehensive psychological evaluation, which was completed in January 2023. The evaluator recommended that mother engage in mental health services as well as drug and alcohol treatment. Over the course of the next several months, DHS referred mother to two different agencies for those services, providing more than one referral to each agency. Mother participated in some of those services, but her overall engagement was sporadic, and she produced several positive UAs. Eviction proceedings were initiated against mother in the fall of 2023, and a judgment awarding restitution of the premises to the landlord was reportedly entered in that case, but it is not clear from the record before us whether mother still resides at the subject premises. The juvenile court took jurisdiction over J and H on two new bases in October 2023, including substance abuse and residential instability.

As of November 2023, mother's Klamath Basin Behavioral Health (KBBH) services were "transferred" to

---

[1] There is a separate dependency case concerning P. His case is not before us in this appeal.

her probation officer. She was again evaluated for drug and alcohol treatment and mental health issues in January 2024 at the request of her probation officer who, in turn, referred mother for related services. As of the date on which the permanency hearing took place in January 2024, the DHS caseworker had not received any updates on mother's participation in services. It is worth noting that DHS provided other services for mother, including skills focused training, a parent mentor who helps mother "navigate services," regular visitation time with J and H, assistance with transportation, and the like. The juvenile court changed the plan to adoption following the permanency hearing held in mid-January 2024.

We recently described the legal principles that apply in permanency hearings when DHS has requested that the permanency plan be changed away from reunification:

> "The juvenile court may not change the permanency plan to something other than reunification unless DHS proves, by a preponderance of the evidence, that DHS made reasonable efforts to make reunification possible, and that notwithstanding those efforts, the parent failed to make sufficient progress toward reunification. The reasonable-efforts inquiry focuses on DHS's conduct, and a parent's resistance to DHS's efforts does not categorically excuse DHS from making meaningful efforts toward that parent. We measure the reasonableness of DHS's efforts based on the totality of the circumstances. We especially scrutinize the period before the permanency hearing sufficient in length to afford a good opportunity to assess parental progress. Additionally, because we consider the child's health and safety as paramount, we evaluate DHS's efforts in light of the particular circumstances of the parent and child. Importantly, the reasonableness of DHS's efforts is measured through the lens of the adjudicated bases for jurisdiction."

*Id.* at 688–89 (citations, internal quotation marks, and brackets omitted). Those principles apply here. Mother relies upon *T. F.* to argue that DHS "referred mother to programs related to some of the jurisdictional bases, but it failed to assist with others." In particular, she contends that DHS "failed to direct any efforts toward mother's 'residential instability,' which became a jurisdictional basis three

months before the permanency hearing[,]" and she asserts that DHS's "efforts must address *all* the adjudicated bases for jurisdiction[.]" But mother reads *T. F.* too broadly.

As we stated in *T. F.*, "[w]e measure the reasonableness of DHS's efforts based on the totality of the circumstances." *Id.* at 689. We look at the efforts DHS made to assist the parents in correcting the circumstances that led to jurisdiction through the lens of the circumstances on which the juvenile court actually based jurisdiction. For example, if the issue is a lack of parenting skills, then we measure the reasonableness of DHS's efforts by looking at what DHS did or what it made available to the parents to help them learn the skills that the juvenile court found lacking. But *T. F.* does not say that DHS's efforts must perfectly match each and every basis of jurisdiction to be reasonable.

To be sure, we reversed a change away from reunification in *T. F.* because the record did not support the reasonable efforts finding made by the juvenile court in that case. But *T. F.* is readily distinguishable from this case. *T. F.* concerned an out-of-state father who voluntarily submitted to jurisdiction in Oregon after he had been separated from his son for more than a decade. Efforts in the first 12 to 20 months of jurisdiction were directed at developing and establishing a relationship between father and son. *Id.* at 684-85. New allegations that focused on father's conduct were added six months before the plan was changed. *Id.* at 687. The corresponding jurisdictional bases found by the juvenile court changed the case. It went from a voluntary case focused on developing a relationship between father and son to a case in which father was found to have endangered his son's safety by his conduct. Very little effort had been put into assisting father to address those new jurisdictional bases before DHS sought to change the plan. We concluded that "something more than an initial phone call and monthly emails was needed to support a finding that DHS made reasonable efforts" given the "totality of the circumstances." *Id.* at 690, 692.

Here, the new jurisdictional bases did not change the focus of the case. Mother had been recommended for drug and alcohol treatment as far back as the beginning

of 2022 after she was found to have had a .25 percent BAC while caring for one of her children. Drug and alcohol treatment was included in the services that DHS asked mother to engage in from very early in the case. DHS provided at least three referrals for such treatment services over the course of jurisdiction, including in early 2023, as a result of mother's psychological evaluation.

We need not address whether DHS's efforts directed solely to the residential instability basis of jurisdiction would have been sufficient, without more. The juvenile court's on-the-record explanation of its decision demonstrates that the basis for its decision to change the plan was that mother "does not understand the needs of the child and lacks the parenting skills to be able to safely and appropriately parent" and "she has a substance-abuse problem that is significantly affecting *** her ability to make safe and appropriate parenting decisions." Because, under the totality of the circumstances, DHS's efforts to assist mother in addressing those conditions were reasonable, and because it is undisputed on appeal that mother had not made sufficient progress for J and H to return safely home, the juvenile court did not err in its reasonable efforts determination, and it did not err when it changed the permanency plan away from reunification.

Affirmed.